LISA ANN PEREZ *v.* ORLANDO PEREZ, JR.
(13597)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued April 5—decision released July 4, 1989

*J. Adrian Rebollo,* with whom was *Steven A. Levy,* for the appellants (paternal grandparents).

*I. David Marder,* with whom was *Irene L. Cornish,* for the appellee (plaintiff).

*Denise Magnoli McNair,* for the minor child.

GLASS, J. The principal issue in this case is whether the trial court had subject matter jurisdiction to modify a custody decree issued by a Superior Court of the Commonwealth of Puerto Rico. The prior decree awarded the custody of Orlando Perez III (Lanny) to his paternal grandparents, the defendants Orlando Perez, Sr., and Lorraine Perez.[1] The defendants have appealed

---

[1] Orlando Perez, Jr., although nominally a defendant, did not take part in the hearing on the plaintiff's petition.

from the trial court's judgment modifying the prior decree and awarding custody of the child to his mother, the plaintiff Lisa Ann Perez. We find no error.

The facts of this case present a tortuous and unhappy history of legal bickering over the custody of the minor child. The plaintiff married the defendant Orlando Perez, Jr., on January 29, 1983, in Middletown. On June 25, 1983, she gave birth to Lanny, the only child of the marriage. The couple and their son lived with the paternal grandparents in Portland until early 1984, when Orlando, Jr., and the plaintiff separated. Thereafter, Lanny continued to live with his paternal grandparents. In February, 1984, the plaintiff commenced dissolution proceedings in the Superior Court for the judicial district of Tolland. Shortly thereafter, Orlando, Jr., fled with Lanny to Florida and later to Puerto Rico. He then initiated custody proceedings in the Superior Court of Puerto Rico. In September, 1984, the Connecticut trial court rendered judgment dissolving the marriage and, with the plaintiff's assent, deferred resolution of Lanny's custody to the Puerto Rico courts. On November 1, 1984, the Puerto Rico court entered a decree awarding custody to the paternal grandparents, and granting the plaintiff reasonable visitation rights.[2] Immediately after issuance of the order, Orlando, Jr., and the paternal grandparents returned with Lanny to Connecticut.

On March 25, 1985, the plaintiff filed a petition for modification in the Connecticut Superior Court, seeking custody of her son. That court, *Kelly, J.,* denied the plaintiff's request for custody, but granted her visitation rights additional to those granted in the 1984 Puerto Rico decree. On the plaintiff's appeal, the Con-

---

[2] The plaintiff appealed the judgment of the Superior Court of Puerto Rico. In a judgment dated January 17, 1985, the Supreme Court of Puerto Rico denied review without comment.

necticut Appellate Court set aside the trial court's denial of the modification petition on an issue unrelated to the present appeal, and remanded the case for further proceedings. *Perez* v. *Perez,* 8 Conn. App. 107, 510 A.2d 1020 (1986).[3] Thereafter, in December, 1987, the Connecticut trial court entered an order, according to an agreement between the plaintiff and all defendants, granting the plaintiff further visitation rights. In January, 1988, however, the defendant grandparents left Connecticut and took Lanny to Puerto Rico without informing the plaintiff. The plaintiff subsequently filed a motion for contempt in the Connecticut Superior Court, asserting that the grandparents had violated her visitation rights. Thereafter, on February 8, 1988, she filed a new petition for modification seeking custody.

A hearing on the plaintiff's contempt motion was held on February 16, 1988. The defendants, however, did not attend. The trial court continued the hearing to February 19, 1988, and ordered the defendants to return Lanny to the court on that date.[4] The defendants, however, neither attended nor returned Lanny as ordered, and the trial court adjudged them in contempt of court. On March 28, 1988, the defendants failed to appear for a hearing on the plaintiff's petition for modification. The trial court, however, continued the hearing to April 4, 1988, upon the assurances of the defendants' counsel that his clients would attend.

---

[3] In *Perez* v. *Perez,* 8 Conn. App. 107, 110, 510 A.2d 1020 (1986), the Appellate Court held that the trial court erred in failing to request the transcripts, records and other documents pertaining to the original custody order from the Superior Court in Puerto Rico as required by General Statutes § 46b-112.

[4] All parties in this case entered appearances. The trial court found that the paternal grandparents had filed an appearance on August 25, 1986, after remand of the case for further proceedings. The father of the child filed a pro se appearance on May 9, 1987. The trial court appointed an attorney to represent the child. Although the maternal grandmother joined the case as an intervening party, she did not take part in the hearing.

The court admonished their counsel that the defendants' failure to appear on April 4 would be a "significant negative factor in evaluating their position with respect to this modification." Although counsel advised the trial court that he had informed his clients of the court's warning, the defendants did not attend the hearing on April 4 or any of the subsequent hearings.

Because the March, 1985 modification petition had not been decided on remand, the trial court treated the February, 1988 petition as a reclaim for a hearing on the original petition. The court conducted hearings on the plaintiff's petition on various days from April 4, 1988, to April 21, 1988. While the hearings were in progress, Orlando Perez, Jr., and Orlando Perez, Sr., appeared in the Superior Court of Puerto Rico and obtained a resolution asserting that the Puerto Rico court continued to have jurisdiction over Lanny's custody. The resolution, dated April 15, 1988, indicated that the Superior Court judge in Puerto Rico had accepted a stipulation submitted by the child's father and grandfather and, accordingly, had referred the matter of Lanny's custody to a family social worker for recommendations concerning "what home or under whose custody would ensure the well being of [Lanny]." The resolution also restricted the removal of Lanny from the jurisdiction of the Puerto Rico court. A copy of the resolution was filed in the Connecticut Superior Court on April 19, 1988. There were also filed in the trial court letters dated April 18 and 19, 1988, from Orlando Perez, Sr., and from the grandparents' attorney in Puerto Rico. These letters represented that "Puerto Rico has again assumed jurisdiction regarding this case. . . ." Neither the letters nor the resolution of April 15, 1988, indicated the date on which Orlando Perez, Sr., and Orlando Perez, Jr., initiated the new action.

On May 5, 1988, the Connecticut trial court rendered judgment granting the plaintiff custody of her son.[5] In its memorandum of decision, the court found that it had subject matter jurisdiction to decide the case, despite the Puerto Rico court's apparent assertion of jurisdiction. The trial court further found that the 1984 Puerto Rico custody award had not been in Lanny's best interests. It noted that the only evidence at that hearing was the reports of Connecticut and Puerto Rico family relations investigators, both of which had recommended that the plaintiff be given custody. The court also found that all the present evidence indicated that the plaintiff "is a mature, stable young woman who loves her son and is fully capable of caring for him," and that there was no evidence suggesting that custody in the plaintiff would be detrimental to the child. It concluded that the child's best interests would be served by granting the plaintiff custody. Accordingly, the trial court rendered judgment modifying the November, 1984 Puerto Rico court order, and awarded custody to the plaintiff, effective immediately. The judgment also provided that the defendants would be given reasonable visitation rights.

On appeal, the defendant grandparents claim that the trial court erred in: (1) finding that it had subject matter jurisdiction to rule on the plaintiff's motion for modification; (2) failing to require the filing of an affidavit regarding other custody proceedings and failing to communicate with the court in Puerto Rico; (3) proceeding on the plaintiff's motion for modification prior

[5] At the hearing, the plaintiff and Yvonne B. Cataldi, a social worker, testifed for the plaintiff. The plaintiff testified that she was presently working at two jobs, that she takes no medication and has no drug or alcohol problem, and that her home life is stable. Eugene R. Boylin, a clinical psychologist, testified for the defendants that the child's custody should not be changed. The grandparents, although represented by counsel, did not testify, nor did they attend the trial.

to the filing of a case study report; (4) relying on a presumption in favor of custody to the plaintiff that could be rebutted only if the defendants demonstrated that a change of custody would be detrimental to the child, and drawing an adverse inference from the defendants' failure to appear and testify; and (5) ordering the immediate change of custody, in light of the conflicting evidence before it and the absence of sufficient information properly to determine the best interests of the child. We find no error.

## I

The defendants first claim that, under the Uniform Child Custody Jurisdiction Act (UCCJA), General Statutes § 46b-90 et seq.,[6] the trial court erred in ruling that it had jurisdiction to modify the custody order of the Puerto Rico court. They argue that Connecticut did not qualify as Lanny's "home state" at the time the modification action commenced and, further, that Puerto Rico had maintained jurisdiction over Lanny's custody. We disagree.

The UCCJA provides in relevant part: "(a) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it

---

[6] In the text of our discussion of the jurisdictional question, we have relied on language from the relevant provisions of the Uniform Child Custody Jurisdiction Act (UCCJA), General Statutes § 46b-90 et seq., rather than the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A. The trial court determined that the UCCJA controlled the jurisdiction of this case. Puerto Rico does not appear to be a signatory of the UCCJA. Cf. *Brown* v. *Brown,* 195 Conn. 98, 99, 486 A.2d 1116 (1985). The parties, however, have not drawn our attention to any differences in language between the two statutes that would warrant an analysis different from that discussed above. Further, although the defendants challenge the trial court's determination that it had jurisdiction, they do not challenge the trial court's application of the UCCJA in making that determination. In any event, the PKPA, which is modeled on the UCCJA, " 'does not significantly disrupt the jurisdictional provisions of [the] UCCJA.' " *Brown* v. *Brown,* supra, 120. For convenience of reference, however, we cite the corresponding PKPA provisions in our discussion.

appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this [act] or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction." General Statutes § 46b-104; see also 28 U.S.C. § 1738A (f). Connecticut has jurisdiction to make or modify a decree if Connecticut "is the home state of the child at the time of commencement of the proceeding." General Statutes § 46b-93 (a) (1) (A); see also 28 U.S.C. § 1738A (c) (2) (A). " 'Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months . . . . Periods of temporary absence of any of the named persons are counted as part of the six month . . . period . . . ." General Statutes § 46b-92 (5); see also 28 U.S.C. § 1738A (b) (4).

The trial court found that the plaintiff had commenced the modification action on March 25, 1985, when she first filed her petition. It found that Lanny had lived in Connecticut since his birth in June, 1983, until early February, 1984, when the plaintiff filed the dissolution action. At that time, Orlando, Jr., removed Lanny from Connecticut and kept him in Florida and Puerto Rico until November, 1984, when the defendants and Lanny returned to Connecticut. Although the period between November, 1984, and March, 1985, was less than six months, the court found that, under the definition of "home state," Lanny's removal to Florida and Puerto Rico constituted a period of temporary absence. General Statutes § 46b-92 (5). Consequently, the court ruled that it had jurisdiction under § 46b-93 (a) (1) (A), since Connecticut had been Lanny's "home state" from his birth until the time the plaintiff commenced the action.[7]

---

[7] The trial court found in the alternative that, whether the action was deemed to have commenced on March 25, 1985, or on February 8, 1988,

The defendants claim that the trial court erred in finding that, under § 46b-104 (a) (2), Connecticut had jurisdiction over the custody matter. They do not, however, argue this point, or challenge the trial court's factual conclusion that Lanny's removal to Florida and Puerto Rico for eight months in 1984 was a temporary absence. Consequently, we conclude that the trial court did not err in finding that Connecticut had jurisdiction under § 46b-104 (a) (2). The defendants do argue, however, that under subsection (1) of § 46b-104 (a), the Connecticut trial court could modify the Puerto Rico custody order only if Puerto Rico did not have jurisdiction, or declined to exercise jurisdiction, at the time the Connecticut trial court conducted the hearing. They assert that the April 15, 1988 resolution stating that the Puerto Rico court retained jurisdiction " 'in agreement with the Uniform Law of Jurisdiction of Custody of Minors . . .' " established that the Puerto Rico court had continuing jurisdiction. We disagree.

The Connecticut trial court found that, as of the date of the hearing, the grandparents had lived in Connecticut "at least since 1983." The grandparents had maintained homes in both Portland and Middletown, the grandfather owned his own business here and the plain-

it still had subject matter jurisdiction under General Statutes § 46b-93 (a) (1) (B), which gives the trial court jurisdiction if Connecticut "had been the child's home state within six months before the commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state." The court found further alternative jurisdiction under § 46b-93 (a) (2), which provides that the trial court will have jurisdiction if "it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." The defendants have not challenged the trial court's conclusions regarding these alternative bases of jurisdiction.

tiff had been a life-long Connecticut resident. Further, after Lanny was returned to Connecticut in November, 1984, all the parties remained in this state until approximately February 1, 1988, when Lanny's grandparents left the state and took him to Puerto Rico, thereby obstructing the plaintiff's visitation rights. The trial court further found that the defendants' removal of Lanny on approximately February 1, 1988, appeared to be "in direct violation of a major purpose of the Act, to 'deter abductions and other unilateral removals of children undertaken to obtain custody awards.' " General Statutes § 46b-91 (a) (5). On the basis of these facts, the trial court concluded that Lanny's connection to Puerto Rico was "tenuous," and that, therefore, Puerto Rico did not have jurisdiction under § 46b-104 (a) (1).

" 'The fact that the [Puerto Rico] court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere.' " *Kioukis* v. *Kioukis,* 185 Conn. 249, 255, 440 A.2d 894 (1981), quoting UCCJA § 14, 9 U.L.A. 154–55 (1979). In the present case, the evidence overwhelmingly supported the trial court's conclusion that, under §§ 46b-93 (a) and 46b-104 (a), the parties' contacts with Puerto Rico did not demonstrate that that forum continued to have jurisdiction at the time of the Connecticut modification hearing. We conclude, therefore, that the trial court did not err in determining that it had subject matter jurisdiction to modify the prior custody order of the Superior Court of Puerto Rico.

## II

The defendant grandparents next claim that, under General Statutes §§ 46b-99 and 52-231a,[8] the trial

---

[8] General Statutes § 46b-99 provides: "(a) Every party in a custody proceeding in his first pleading or in an affidavit attached to that pleading shall

court erred in failing to require the filing of an affidavit stating that there was no other pending action concerning the custody of the child. They also claim that, under General Statutes § 46b-96 (c),[9] the trial court

give information under oath as to the child's present address, the places where the child has lived within the last five years, and the names and present addresses of the persons with whom the child has lived during that period. In this pleading or affidavit every party shall further declare under oath whether: (1) He has participated as a party, witness or in any other capacity in any other litigation concerning the custody of the same child in this or any other state; (2) he has information of any custody proceeding concerning the child pending in a court of this or any other state; and (3) he knows of any person not a party to the proceedings who has physical custody of the child or claims to have custody or visitation rights with respect to the child.

"(b) If the declaration as to any of the above items is in the affirmative the declarant shall give additional information under oath as required by the court. The court may examine the parties under oath as to details of the information furnished and as to other matters pertinent to the court's jurisdiction and the disposition of the case.

"(c) Each party has a continuing duty to inform the court of any custody proceeding concerning the child in this or any other state of which he obtained information during this proceeding."

General Statutes § 52-231a provides: "Before any court enters any decree in a matter pending before it involving the custody of a minor child or children, an affidavit shall be filed with said court averring that there is no proceeding pending in any other court affecting the custody of such children or any of them or, if there is such a proceeding, a statement in detail of the nature of the proceeding and averring that the decree of the court would not conflict with or interfere with such other proceeding. For the purposes of this affidavit, visitation rights granted by the superior court shall not be considered as affecting the custody of such child or children."

See also Practice Book § 476.

[9] General Statutes § 46b-96 (c) provides: "If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 46b-109 to 46b-112, inclusive. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state, it shall immediately inform such court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction, it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum."

should have communicated with the Puerto Rico court to determine the appropriate forum for the litigation upon learning that an action concerning Lanny's custody had been commenced in Puerto Rico. We are not persuaded.

Section 52-231a provides that before the trial court enters any decree concerning child custody, an affidavit must be filed in the court averring either that there is no other custody proceeding concerning the same child pending elsewhere or, if there is, that a decree of the trial court would not "conflict with . . . or interfere with such other proceeding." The pertinent part of § 46b-99 requires the parties to a child custody action to disclose to the court any information they may have obtained, at the outset or during the proceeding, concerning any other custody proceeding involving the child.

In the present case, the plaintiff attached an affidavit to her March 25, 1985 petition for modification. That affidavit did not expressly aver that there were no other proceedings concerning Lanny's custody at that time. It did, however, provide the court with a detailed account of the 1984 Puerto Rico custody hearing. Although we do not condone the deviation from the express requirements of § 52-231a, it is quite clear that the plaintiff's affidavit satisfied the purposes of that statute by fully apprising the trial court of any other custody proceedings involving Lanny. There were, in fact, no other pending custody proceedings in Puerto Rico or elsewhere on March 25, 1985, or on February 8, 1988, when the plaintiff reclaimed a hearing on her petition. Further, there is nothing in the record to suggest that the plaintiff did not adhere to the disclosure requirements of § 46b-99.

Even if we assume that the affidavit did not satisfy § 52-231a, the trial court's rendering of judgment without

such an affidavit was harmless. The defendants themselves commenced the April, 1988 custody proceeding in Puerto Rico while hearings on the Connecticut matter were in progress.[10] The defendants' attorneys in Puerto Rico and Connecticut apprised the trial court of the new Puerto Rico custody action. The trial court gave plenary consideration to whether it had subject matter jurisdiction to modify the prior decree. In concluding that it had jurisdiction, and that Puerto Rico did not, the court implicitly found that its decree would not "conflict with or interfere with [the] other proceeding." The purpose of § 52-231a, therefore, was fulfilled. Consequently, any error in the trial court's rendering of judgment without a § 52-231a affidavit was harmless.

Similarly, we are not persuaded that the trial court erred in failing to communicate with the Puerto Rico court once it learned of that court's April 15, 1988 resolution. See General Statutes § 46b-96 (c). The defendants argue that the Puerto Rico court's resolution of April 15, 1988, placed them in the untenable position of having to violate that resolution in order to comply with the Connecticut court's order to return Lanny. They claim, therefore, that the trial court's failure to communicate with the Puerto Rico court "to the end that the issue may be litigated in the more appropriate forum" placed them on the proverbial "horns of a dilemma." Having instituted the Puerto Rico action by means of an intraparty stipulation, however, the defendants honed the points of those horns themselves.

---

[10] As noted above, the copy of the Puerto Rico court's April 15, 1988 resolution, as well as the letters sent by Orlando Perez, Sr., and his lawyer in Puerto Rico, do not disclose the date on which Orlando Perez, Jr., and Orlando Perez, Sr., initiated the custody action in Puerto Rico. The defendants have not, however, challenged the trial court's finding in its memorandum of decision that "[w]hile [the] hearing [on the plaintiff's petition] was in progress, the child's father appeared in the Puerto Rico superior court and obtained an order which asserts that court's jurisdiction."

They do not challenge the trial court's implicit conclusion that their flight to Puerto Rico in February, 1988, and subsequent initiation of the custody action in that forum was in bad faith. In fact, they concede that, in removing Lanny from Connecticut in February, 1988, they obstructed the plaintiff's visitation rights that had been provided by the original Puerto Rico decree in 1984 and subsequently augmented in Connecticut in 1985 and 1987. The trial court therefore did not err in not communicating with the Puerto Rico court.

## III

We disagree with the defendants' next claim that the trial court should not have disposed of the case without the filing of a previously ordered case study report. General Statutes § 46b-6[11] states that the trial court may order an investigation of any circumstances relevant to the disposition of a family relations matter. Section 46b-7[12] provides that, if such an investigation has been ordered, the trial court shall not dispose of the

---

[11] "[General Statutes] Sec. 46b-6. (Formerly Sec. 51-337). INVESTIGATIONS. In any pending family relations matter the court or any judge may cause an investigation to be made with respect to any circumstance of the matter which may be helpful or material or relevant to a proper disposition of the case. Such investigation may include an examination of the parentage and surroundings of any child, his age, habits and history, inquiry into the home conditions, habits and character of his parents or guardians and evaluation of his mental or physical condition. In any action for dissolution of marriage, legal separation or annulment of marriage such investigation may include an examination into the age, habits and history of the parties, the causes of marital discord and the financial ability of the parties to furnish support to either spouse or any dependent child."

[12] "[General Statutes] Sec. 46b-7. (Formerly Sec. 51-338). REPORT OF INVESTIGATION TO BE FILED. Whenever, in any family relations matter, including appeals from the superior court, an investigation has been ordered, the case shall not be disposed of until the report has been filed as hereinafter provided, and counsel and the parties have had a reasonable opportunity to examine it prior to the time the case is to be heard. Any report of an investigation shall be made in quadruplicate and shall be filed with the clerk and mailed to counsel of record."

case until the report has been filed. In the present case, the trial court ordered a § 46b-6 investigation. Michael Festa, the investigating family relations officer, testified at trial. He began the investigation in late March, 1988, and interviewed the plaintiff, her boyfriend and her mother. Festa testified about the information he had acquired during his investigation. He also testified that his supervisor had advised him to discontinue the investigation because of the absence of the other parties. The record demonstrates that the grandparents' flight from Connecticut precluded the completion or filing of the report. The trial court, therefore, did not err in disposing of the case without the filing of the report.

## IV

The defendants next claim that the trial court erred in ruling that they had the burden of proving that it would be detrimental for the child to be in the plaintiff's custody. They also claim that the court erred in drawing an adverse inference from the defendants' failure to attend the hearing and testify. We are not persuaded.

General Statutes § 46b-56 (b) provides that "[i]n making or modifying any order with respect to custody or visitation, the court shall be guided by the best interests of the child . . . . " General Statutes § 46b-56b, enacted in 1985 and amended in 1986, provides that "[i]n any dispute as to the custody of a minor child involving a parent and a nonparent, there shall be a presumption that it is in the best interest of the child to be in the custody of the parent, which presumption may be rebutted by showing that it would be detrimental to the child to permit the parent to have custody." Public Acts 1985, No. 85-244, § 2; Public Acts 1986, No. 86-224.

In its memorandum of decision, the trial court stated that, under § 46b-56b, the plaintiff still had the burden of showing "that it would be in the best interests of the child to award custody to her. [The plaintiff, however,] is aided by a presumption in her favor which may be overcome only by substantial evidence which proves that such a change would be detrimental to the child." The court explained that "[a]lthough the . . . presumption [does] not . . . shift the burden of proof as a matter of law . . . [i]f the opposing party's evidence fails to prove the rebutting facts . . . [the] presumption must be accepted as true." The trial court went on to find that "[t]here was not the slightest evidence that [custody in the plaintiff] would be detrimental to the child if she should have custody of him," and concluded that it was "presently in the best interests of the child for his mother to have custody of him."

The defendants argue that the trial court impermissibly applied § 46b-56b retroactively since the statute was enacted after the date of the original custody order in November, 1984. We disagree. Statutory amendments affecting evidentiary rules, such as rules concerning the burden of proof, generally apply to all proceedings after the amendment, regardless of when the incidents underlying the action occurred. *Allen* v. *Fisher,* 118 Ariz. 95, 574 P.2d 1314 (1977); *United Securities Corporation* v. *Bruton,* 213 A.2d 892, 893–94 (D.C. App. 1965); *City Council* v. *Vinciullo,* 364 Mass. 624, 628, 307 N.E.2d 316 (1974); but see *Matter of Reardon,* 25 App. Div. 370, 372, 269 N.Y.S.2d 635 (1966).

The defendants also argue that § 46b-56b should apply only to initial custody determinations and not to modification actions. In their view, the presumption would make no sense in a modification action commenced by a parent if, in the prior proceeding, the child's best interests must have been found to lie with

the nonparent. The express language of § 46b-56b, however, makes the presumption favoring the parent applicable to "*any* dispute as to the custody of a minor child involving a parent and a nonparent . . . . " (Emphasis added.) Moreover, the rule that favors the custody of parents over nonparents in any custody dispute is well established. See *Hao Thi Popp* v. *Lucas,* 182 Conn. 545, 551, 438 A.2d 755 (1980); H. Clark, Domestic Relations § 17.5, p. 591 and cases cited at pp. 591–92 n.5; cf. *McGaffin* v. *Roberts,* 193 Conn. 393, 405–407, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985).[13]

We are not persuaded by the defendants' assertion that because the evidence did not warrant the conclusion that custody in the plaintiff would serve the child's best interests, the trial court's reliance on the § 46b-56b presumption led to an erroneous result. The trial court heard testimony from the plaintiff as well as her expert witness, social worker Yvonne B. Cataldi, that at present Lanny was strongly attached to his grandparents, felt hostility toward his mother, and that a transfer in custody might be somewhat traumatic. Cataldi also testified, however, that a close mother-son relationship was essential to Lanny's psychological development, that his contacts with his mother demonstrated that their relationship, if allowed to be nurtured, would improve and stabilize, that the plaintiff was in all respects a good mother, and that the defendants had consistently acted to thwart the development of a mother-son relationship between Lanny and the plaintiff.

---

[13] In *McGaffin* v. *Roberts,* 193 Conn. 393, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985), we held that General Statutes § 45-43, which provides that if a father or mother dies or is removed as guardian, the other parent shall become sole guardian, did not create in a surviving father a presumption entitling him to custody of the child in preference to the child's maternal grandmother. *McGaffin* was decided before the enactment of General Statutes § 46b-56b.

The defendants' expert, child psychologist Eugene R. Boylin, agreed with Cataldi that it was important for Lanny to have continued and increased contacts with his mother. He nevertheless testified that a change in custody at the present time might severely affect Lanny's development. The trial court found, however, that Cataldi's testimony was entitled to greater weight than Boylin's. Cataldi had counseled and interviewed all the parties, together and separately, at length, but Boylin had seen the parties on only three occasions, during which he had been introduced to the plaintiff as a friend of the family, and not as a child psychologist.

"We cannot retry the case." *Cookson* v. *Cookson,* 201 Conn. 229, 242, 514 A.2d 323 (1986). In the present case, "we cannot say, from our review of the record, that the conclusions of the trial court were legally or logically incorrect or unsupported by the facts or that the evidence was insufficient for the trial court to rule as it did." Id., 243–44. Moreover, we agree with the defendants that nothing in § 46b-56b affects the trial court's obligation to award custody upon the basis of the child's best interests. See *Hall* v. *Hall,* 186 Conn. 118, 121, 439 A.2d 447 (1982). In this case, however, "[t]here is no doubt that the trial court understood and employed the 'best interests' standard as the ultimate basis of its decision." *McGaffin* v. *Roberts,* supra, 408. Even if we assume that the evidence was such that the only reasonable conclusion would have been that Lanny's best interests would be served equally well by custody in either party, the trial court would have been legally correct in awarding custody to the plaintiff because of the presumption of § 46b-56b. We conclude, therefore, that the trial court did not err in its application of § 46b-56b.

The defendants also claim that the trial court should not have drawn an adverse inference from their failure to attend and testify at the April, 1988 hearing.

See *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960). They argue that such an inference is inapplicable to a custody hearing because it focuses not on the child's best interests but on the conduct of the litigants. They further assert that it should not be applied in this case because, if they had attended the hearings, but left Lanny in Puerto Rico, as they were required to do under the Puerto Rico court's resolution, they would have faced penalties pursuant to the trial court's judgment of contempt. We are not persuaded.

On March 28, 1988, the trial court instructed the defendants' counsel to contact his clients in Puerto Rico and inform them that "the court would consider their absence as a significant negative factor in evaluating their position with respect to this modification. . . . I want you to underscore . . . that their presence the court would consider . . . a real necessity in evaluating whatever arguments they might have. Their absence from court is going to severely affect the strength of their arguments." The hearing commenced on April 4, 1988, as scheduled. The defendants did not attend. Their counsel informed the court that "I have talked to them . . . . I communicated very clearly the Court's opinion that their presence, if not in court today, would be considered heavily in deciding this case . . . . " Although counsel also informed the court that Orlando Perez, Sr., told him that he was trying to get a flight out of Puerto Rico, the record shows that the defendants did not attend on April 4 or on any of the subsequent hearing dates. The defendants have not argued on appeal that they were unable to attend because of difficulty in making travel arrangements. In its memorandum of decision, the trial court stated that "the court does infer that [the defendants'] testimony, if it had been given, would have been unfavorable to their cause."

The record thus demonstrates that: (1) on February 19, 1988, the trial court found the defendants in contempt for failing to bring Lanny to court; (2) on March 28, 1988, the trial court admonished the defendants through counsel of the adverse consequences of their failure to attend the hearing or to testify; and (3) on April 4, 1988, the hearing on the plaintiff's petition began. These events occurred prior to the April 15, 1988 Puerto Rico court resolution restricting Lanny's removal from the Commonwealth. Thus, the record does not support the defendants' claim that they were legally constrained from attending the hearing at its outset. Further, as we have already indicated, the defendants obtained the Puerto Rico resolution by means of an intraparty agreement after the Connecticut trial court's order to produce the child and after its admonition respecting the adverse inference. In *Hall* v. *Hall,* supra, 124, we stated that "[t]he . . . wilful disobedience of . . . court orders . . . evidenced gross disrespect for the law and raised questions about . . . character, which are relevant to the welfare of the child." Under the circumstances of the present case, the trial court was entitled to draw an adverse inference from the defendants' failure to testify.

V

The defendants' last claim is that, in view of the conflicting evidence before it, the trial court abused its discretion in ordering a change in custody without first seeking additional information concerning Lanny's best interests. We have already concluded that the trial court properly declined to communicate with the Puerto Rico court before reaching its decision. Further, we have already reviewed the defendants' assertion that the evidence did not warrant a conclusion that a change in custody would be in the child's best interests. We

conclude that the trial court did not abuse its discretion in granting the plaintiff's petition for modification.

There is no error.

In this opinion the other justices concurred.