[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[MEMORANDUM OF DECISION]
In the instant action, the plaintiff, the defendant and the intervening third party defendants all seek exclusive custody of Matthew John Devino, born December 12, 1989 and Jessica Marie Devino born June 12, 1991. The two minor children are the issue of the plaintiff, Linda J. Foster, and the defendant, Michael J. Devino. They are also the grandchildren of the intervenors, Robert J. and Patricia Devino.
In support of their respective claims, the parties and their witnesses were fully heard during five days of trial ending on January 21, 1994.
A review of the credible evidence presents the following history.
On March 31, 1992, the plaintiff applied for and obtained an ex parte restraining order against the defendant having alleged as a ground, physical abuse. At the full hearing on the application, held on April 13, 1992, the court, in accordance with the agreement of the parties, continued the temporary restraining order protecting the plaintiff, appointed her custodial parent of the two minor children and provided defendant with certain visitation rights.
On July 21, 1992, pursuant to § 46b-61 of the General Statutes, the plaintiff brought the instant action against the defendant seeking sole custody of their two children. Shortly thereafter, the paternal grandparents, with whom the defendant was and is residing, sought the court's permission to intervene.
On August 11, 1992, the court granted their requests and CT Page 4925 also awarded them visitation pendente lite. In addition, the court appointed Attorney Kevin Daly to represent the children and, on August 31st, ordered the Department of Family Services to conduct a full custody study.
At a hearing on Michael J. Devino's motion for custody held on December 14, 1992, the court, again in accordance with the agreement of the parties, continued plaintiff's custody arrangement and required as a result of concerns regarding possible physical abuse, parental aid assistance for both plaintiff and the paternal grandparents. Unfortunately, the children seemed to have suffered an inordinate number of bumps, scrapes, bruises and contusions while in the custody and control of the plaintiff.
Approximately two weeks later, the grandparents, now third party defendants, filed an answer and cross complaint, with the court, alleging that both plaintiff and defendant are unfit parents or are incapable of providing the children with proper care. Further, the third party defendants claimed that awarding them custody would be in the childrens' best interests.
On March 1, 1993, the court, Harrigan, J., found the plaintiff in contempt of his September 11, 1992 visitation orders because she refused to allow the children to visit the third party defendants.
Later that month, since defendant was living with his parents and there was some concern about his behavior being inappropriate, his visitation was made concurrent with theirs. Next, the grandparents sought temporary custody contending that the children risked physical injury while living with the plaintiff. After hearing, the court, Murray, J. ordered that protective services be provided the children, by the Department of Children and Youth Services, and that all parties cooperate with the Department and with any intervention or family preservation program it involved. The department retained Dr. Ralph S. Welsh, Clinical Psychologist, to evaluate the parties.
Thereafter, the plaintiff was found in contempt by this court for failing to take Matthew to preschool, at the local Waterbury Y.M.C.A., as required by the court's orders of November 1, 1993. She had been ordered to enroll Matthew and take him to pre-school so that he would be provided the stimulation that would assist in his intellectual growth and CT Page 4926 development, something that the plaintiff could not adequately provide; but she refused to follow the court's mandate until threatened with incarceration. She reasoned that the grandparents, by volunteering to pay for the pre-school, would be able to exercise too much control over the children. Apparently she didn't consider the child's welfare at all. She was also required to take both children to Dr. Sidney Horowitz' office for psychological evaluation but failed to take Jessica to the scheduled appointment.
Plaintiff, who appears to be in good physical health and who will be twenty-four on her next birthday, was born on May 22, 1970. She left school in the ninth grade and has a minimal work history. She presently receives state assistance for her two minor children and resides at 448 Willow Street in Waterbury, Connecticut. Included in the Willow Street household are: plaintiff's live-in boyfriend, James Blais, who earlier had a relationship with plaintiff's sister, Debbie, and fathered Debbie's only child, Steven; plaintiff's mother, Margaret Foster, on whom plaintiff depends for advice and assistance in raising her children, and the man with whom Margaret Foster has lived for the past twenty-seven years, Michael Cosgrove, owner of the Willow Street residence; Michelle Foster, the adult daughter and only child of the said Margaret Foster and Michael Cosgrove; and plaintiff's irresponsible adult half brother, Wayne Foster. The remaining member of this blended family, the four adult children of Margaret Foster and the husband she has not divorced named Foster, do not reside at the Willow Street address. It should be noted that plaintiff, who uses the name Foster but calls Michael Cosgrove her father, is related to neither. Her father's last name is Martino.
The defendant, born on December 3, 1964, appears to be in good health. He is a high school graduate and will be thirty on his next birthday. He has a good employment history having worked for the City of Waterbury Park's and Recreation Department as a laborer, for a number of years. Both plaintiff and defendant are intellectually challenged although their children are not.
Plaintiff and defendant are not married and did not live together before the birth of their son Matthew. However, six months thereafter, they began living together and continued to do so from May of 1990 to March 31, 1992. During that period of time, daughter Jessica was born to them. CT Page 4927
The defendant has acknowledged paternity of both Matthew and Jessica and presently makes his support payments to the State of Connecticut.
As indicated earlier, on March 31, 1992, plaintiff left defendant claiming physical abuse. She moved, with their two children, to the 448 Willow Street residence where they remained until September 1992. During that month they moved to a two bedroom condominium in Danbury with James Blais where they lived until September, 1993. At the time she commenced the instant suit seeking exclusive custody, plaintiff and the two children were living in Danbury with James Blais while defendant was living in Waterbury with his parents, Ralph and Patricia Devino.
The intervening third party defendants, the above referenced Ralph and Patricia Devino are both in their 52nd year and appear to be in good health. Ralph Devino, a small businessman, is presently self employed as a truck driver operating his own tractor trailer. Previously he had, among others, a real estate development business and an air conditioning business. He has completed one year of college having left school, in order to assist in the operation of the family oil business, after the death of his father. He has been married to Patricia Devino for the past thirty-two years and during that time they have successfully raised six children. He is a good provider and has a good relationship with his grandchildren. Ralph and Patricia Devino live in Waterbury, in a nine room home that they own and the defendant presently resides with them.
Patricia Devino, a college graduate with a number of credits toward her masters degree, is employed as a part-time teacher at a local parochial school teaching the 6th, 7th or 8th grades. She has a very good relationship with her grandchildren, Matthew and Jessica, and will leave her job and refuse further employment in order to become their primary care giver. She will devote full time to their care and nurturing should she and her husband be awarded custody.
The Devinos find authority for their intervention and claim for custody in § 46b-57 of the General Statutes.
Section 46b-57 provides as follows: CT Page 4928
 Sec. 46b-57. (Formerly Sec. 46-47). Third Party intervention re custody of minor children. Preference of child. In any controversy before the superior court as to the custody of minor children, and on any complaint under this chapter or section 46b-1 or 51-348a, if there is any minor child of either or both parties, the court if it has jurisdiction under the provisions of chapter 815o, may allow any interested third party or parties to intervene upon motion. The court may award full or partial custody, care education and visitation rights of such child to any such third party upon such conditions and limitations as it deems equitable. Before allowing any intervention, the court may appoint counsel for the child or children pursuant to the provisions of section 46b-54. In making any order under this section the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference.
In its last sentence, the statute requires the court to consider the children' intelligent preference regarding custody. Based on their tender years, however, the court concludes that neither Matthew, who was four years and two months old at the time of the hearing, nor Jessica, who was two years and eight months old, were of sufficient age or capable of forming an intelligent preference with regard to their custody. Therefore, their wishes were not solicited. Their attorney, however, acting in what he perceives to be their best interest, was fully heard and has made his preference known.
Although the present action was brought by a parent against a parent, the actual contest is between the plaintiff-parent and intervening non-parents seeking custody under their cross complaint. The defendant, attempting to champion the latter's cause and claim, admits in his pleadings and testimony that the best interests of the children would be served by awarding custody to them. Therefore, he is not considered a viable candidate for custody and, even if he were, it is clear that he is deficient in certain parenting skills and would not be the court's choice for custodian.
Under these circumstances, § 46b-56b of the General Statutes controls. CT Page 4929
Section 46b-56b provides as follows:
 Sec. 46b-56b. Presumption re best interest of child to be in custody of parent. In any dispute as to the custody of a minor child involving a parent and a nonparent, there shall be a presumption that it is in the best interest of the child to be in the custody of the parent, which presumption may be rebutted by showing that it would be detrimental to the child to permit the parent to have custody.
In the case of [Perez] v. [Perez], 212 Conn. 63,78 (1989), the Supreme Court examined this statute and adopted the following trial court's analysis:
 "that, under § 46b-56b, the plaintiff still had the burden of showing `that it would be in the best interests of the child to award custody to her. [The plaintiff, however,] is aided by a presumption in her favor which may be overcome only by substantial evidence which proves that such a change would be detrimental to the child.' The court explained that `[a]lthough the . . . presumption [does] not . . . shift the burden of proof as a matter of law . . . [i]f the opposing party's evidence fails to prove the rebutting facts . . . [the] presumption must be accepted as true.'"
A review of the credible evidence presents plaintiff as an individual deficient in parenting skills and ability. Clearly, such deficiency has a detrimental effect on the children' growth, development and well being. It is axiomatic that children who grow up without proper nurturing are children at risk. Consequently, the court finds that the statutory presumption favoring the plaintiff is properly rebutted by substantial evidence showing that to continue to permit her to have custody would be detrimental to the children.
As and for guidance in arriving at this decision and determining the best interest of the children, this court looked to a principle enunciated in the case of [Yontef] v. [Yontef],185 Conn. 275, 283 (1981). In that case, while discussing the best interest of a child, in a custody contest between two parents, the court stated a principle that applies equally as well to the present, parent non-parent contest. That principle requires the CT Page 4930 trial court "[i]n the exercise of its awesome responsibility to find the most salutary custodial arrangement for the children . . ." to take "account of the parents past behavior, since it must evaluate their present and future parenting ability and [its] consistency. . . ."
This court also looked, for assistance, to the trial court's decision in [Rudolewicz] v. [Rudolewicz], Superior Court J.D. of Hartford-New Britain at New Britain, D.N. 410812, August 20, 1986. In that case the court enumerated 22 criteria gleaned from a number of other cases that it analyzed and employed to determine the best interest standard, when making its custody award. Those criteria that apply equally as well to the instant case are as follows:
Parenting skills including past behavior relating to Parenting ability; behavior detrimental to a child's development and/or to a child's relationship with other potential custodians; wilful disobedience of a court order by a potential custodian evidencing a facet of character; a determination as to which potential custodian is more willing and able to address medical and educational needs of the children and best serve their psychological growth and development; the psychological instability of a potential custodian posing a threat to the children; the relationship each person seeking custody has with the children; the time each would be able to devote to the children on a day-to-day basis; the continuity and stability of the home environment; Family Relation Division Report recommendation and the recommendation of the attorney appointed to represent the minor children.
While the court has no doubt that plaintiff loves her children, there is substantial credible evidence that she is lacking in parenting skills.
As observed by Family Relations Counselor Christopher Hadad in his custody study report,
"[Plaintiff's] love and affection for the children appears to be genuine, however, her ability to most appropriately meet the needs of a two and three year old is in question."
The court finds that plaintiff, as indicated by Dr. Ralph S. Welsh in his Psychological Evaluation of her, is "an individual [with] very poor judgment, a person who is likely to CT Page 4931 act on impulse, a person who seems to have little insight into the situations occurring in her life" and as a result, Welsh suspects, a person who overreacts to her children. Dr. Welsh mirrors the concern of all involved regarding the numerous injuries to the children. Family Relations Counselor Hadad sums it up in his report as follows: "While the exact causes of many of the numerous injuries the children have experienced has not been determined, some conclusions can be drawn. First, the children have experienced far too many bumps, cuts, and bruises. Second, the majority of these incidents have occurred while the children were under plaintiff's care."
Dr. Welsh reports that while "[plaintiff] admits that she does hit the children and they `get a little out of hand' [she] does not see herself as abusive. However because of her poor judgment it is doubtful that the [plaintiff] really understands how her behavior is likely to look to outsiders."
While he initially believed that plaintiff was capable of caring for one child, Welsh testified that at present he believes both children to be at risk while plaintiff is their primary care taker. He feels neither plaintiff nor defendant should be placed in that position.
In summary Dr. Welsh finds that while plaintiff verbalizes reasonably well, she not only has poor judgment but harbors considerable anger and aggression, and has limited ability too deal with same. She is impulsive and has poor planning ability. Consequently, he finds that the present custody situation presents a potential for physical injury to the children. However, as a result of his evaluation of Ralph and Patricia Devino, he believes that they are fully prepared and ready to care for the children and will provide them with a safe and secure home, should they be granted custody.
Attorney Kevin Daly, representing the children, mirrors Dr. Welshs' concern as a result of the "cumulative number of bruises that have occurred [to them] over the year and one-half", and the plaintiff's less than credible explanation of how those injuries happened. He has difficulty believing the plaintiff's explanations and so does the court.
Attorney Daly fully supports Family Relations Counselor Hadad's recommendations regarding custody. CT Page 4932
While the court finds no hard and fast proof that plaintiff has physically abused her children, if the numerous injuries that they suffered while in her custody were not intentionally or wilfully inflicted, then, in the main, they resulted from poor or inadequate supervision and plaintiff's failure to appreciate in advance of a problem, the need to take corrective measures. Certainly, plaintiff lacks insight significant to parenting and needs assistance, education and guidance in parenting skills. Unfortunately, in the past, when such assistance was offered or ordered, she refused or ignored it. On one occasion during the pendency of this matter, the parties stipulated to having a parent aide visit both plaintiff and Ralph and Patricia Devino's home in order to help assess the possible needs for parenting education and to help determine the source of recurrent incidents of cuts and bruises on the children. The parent aide intervention never occurred at Linda Foster's home because she refused assistance and avoided the parent aide.
The Devino home, however, was visited weekly from March 31, 1993 to May 12, 1993, by a parent aide from the Waterbury Regional Department of Pediatrics. During and after those visits, the parent aide noted that Patricia Devino appeared to be a competent, affectionate caretaker and that she and her family provided adequate supervision, were attentive and had a good understanding of the childrens' emotional and physical capabilities and needs. The aide also evaluated the defendant, who was present during all of her visits, noting that he "also appeared to be appropriate and attentive with his children."
On May 12, 1993, the department closed its file because Patricia Devino and her family did not require parenting guidance or education. Clearly, the same cannot be said for Linda Foster who is in dire need of guidance, yet, excludes professional assistance and has no significant support system to help her.
Additionally, the court finds that plaintiff has had past problems in providing the appropriate response to the health needs of the children. This includes her failure, on occasion, to follow up with doctor visits, her inappropriate treatment, with peroxide, of a severe burn on Jessica's right arm and wrist, and her failure to appreciate the potential for severity of childhood illness if not properly treated. CT Page 4933
Nor does plaintiff recognize the inappropriateness of her present residence for the childrens' home environment or that discussing, in their presence, her problems with the defendant and third party defendants is also inappropriate.
Further, to the foregoing, the plaintiff has wilfully disobeyed a court order thereby evidencing a fault of her character, as does her lack of voracity.
The court believes that these traits impact negatively on the plaintiff's desire and ability to instill, in the children, respect for truth and authority and therefore will work to their detriment.
Also to their detriment is the fact that, on a number of occasions, plaintiff has subverted the visitation rights of the defendant and third party defendants with them.
In all, plaintiff's continued custody would certainly be harmful to the children and, as indicated by Family Relations Counselor Hadad, "while in many ways Linda may herself be a victim, and it is clear that even a temporary change of custody may have a devastating impact upon [her], it does not appear to be in the children' best interest to remain in [her] custody at this time."
Further, Counselor Hadad in his report states that:
 Grandmother, Pat Devino, has consistently expressed strong concern for the children's well being and has also consistently represented a willingness to see to their needs. She has maintained a very close and loving relationship with the children. Grandmother appears to have agonized over how she can best help Jessica and Matthew and her petition for custody appears to be based upon genuine concern. She appears capable of meeting all of the children's needs and has consistently represented a willingness to do whatever she can to maintain a strong relationship between the children and their mother. She has also shown an ability to follow through with recommendations. It is the opinion of the Family Relations office that paternal grandmother, Pat Devino, is best suited at this time to have custody of Matthew and Jessica. CT Page 4934
As indicated earlier, Attorney Daly, representing the children, agrees with Hadad's recommendation.
The court finds by a fair preponderance of the credible evidence that the third party defendants, Ralph and Patricia Devino, are well equipped and prepared to meet the psychological, emotional, physical, medical and educational needs of the children; that they have adequate parenting skills and will provide the children with a stabilizing environment; that they will work to foster a strong and continuing relationship between the children and their parents; and that, as primary caretaker, Patricia Devino will devote much of her time to the children. Therefore, the court finds that the best interests of the children will be served by awarding their custody to the Devinos.
Recognizing the strong and abiding love that Linda Foster and her children have for each other, however, the court is reluctant to remove the children for any longer than is necessary. Rather, the court envisions a time when, after having acquired the requisite parenting skills, she may again regain custody. With this in mind, the court enters the following orders:
1. That custody of the two minor children, Matthew and Jessica, is awarded the third party defendants and paternal grandparents, Ralph and Patricia Devino;
2. That both parents, Linda Foster and Michael Devino are to be actively involved in all decision-making regarding the health, education, and welfare of the two children, however, in the event that a mutually agreed upon decision cannot be achieved, Ralph and Patricia Devino are the final arbiters as to what is in the children' best interests;
3. That Patricia Devino, as the childrens' primary caretaker, and the plaintiff, Linda Foster, in an effort to establish improved communication, engage in such joint counselling as is arranged/or recommended by the Family Relations Office;
4. That Linda Foster, should she desire to seek custody of the children in the future, engage in such parenting skills counselling and/or classes as can be arranged through the Family Relations Office; CT Page 4935
5. That the Defendant, Michael Devino, not be allowed to be the childrens' primary caretaker at any time, until further order of the court;
6. That the following visitation schedule control unless modified in the childrens' best interests.
 a. The children are to reside primarily with Ralph and Patricia Devino weekdays with open, reasonable and flexible visitation to the plaintiff. This is to include, but not necessarily be limited to, two weekends per month from Friday evening to Sunday evening and two weekday evenings per week. No specific allowance of visitation is made to the defendant since it is assumed that he will continue to reside with the third party defendants.
 b. The plaintiff is to be allowed additional visitation at the Devino's home, if reasonable, upon one days prior notice.
 c. Holiday time is to be shared on an alternating basis or by prior mutual agreement.
7. And, that this matter will be reviewed on an annual basis upon the request of any party.
WEST, J.