[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I PROCEDURAL
The three children, subject to the petitions of neglect and uncared for, are Jonathan P., born December 2, 1985; Yvonne P., born June 5, 1987; and Sonya P., born November 2, 1988. A previous petition had been brought against Alice M., mother of the minor children and Dennis P., father of the minor children in 1992, because Alice M. was exposing the children to her drug use, and CT Page 12304 Dennis P. was unwilling or unable to care for his children. As a result of the above mentioned petition, custody and guardianship was granted to the maternal grandmother, Yvonne R., by the Superior Court for Juvenile Matters in Danbury on January 19, 1993. On or about June 3, 1997, Yvonne R. became unable, in her own opinion, to fully care for the three minor children due to her concerns about her health. As a result, during the month of August of 1997, Ms. R. transferred physical custody of the children to their cousin, Demisha M. The children have resided with Demisha M. to the present time. On or about October 14, 1998, the Department of Children and Families (hereinafter DCF) effected a ninety-six hour hold on the children, and on October 16, 1998, an order of temporary custody was requested and ordered. Said order of temporary custody alleged that the children were homeless as their legal guardian, Yvonne R., was unable to provide care for them. The summary of facts alleged that Yvonne R. was granted guardianship based on mother's ongoing substance abuse and father's sporadic contact with the children; that Yvonne R. was unable to fully plan and care for the children on an ongoing basis; that Demisha M. was willing to continue to be a placement resource for the children; that the children had reported to DCF that they wish to live with Demisha M.; and that Demisha M. lacked the financial resources to provide for the children.
On March 10, 1999, the court granted DCF's motion to amend the petition by the addition of an allegation of neglect in that the children were being denied proper care and attention, physically, educationally, emotionally and morally. The amended summary of facts further alleged that the father was not consistent with his visitation with the children; that the father was inappropriately discussing the case before the court with the children; and as a result the children were upset and "acting out behaviorally" after visiting with him; that the father had accused the children of stealing his checkbook; and that the father had locked his son, Jonathan, in a dark, locked bathroom for approximately one-half hour as a means of discipline.
Pro forma denials were entered to the petition (it should be noted that only the father objected to the adjudication as mother concurred that the children should be placed with Demisha M.). The trial commenced on April 9, 1999 and concluded on July 21, 1999 with a total of four days of testimony. Proposed findings of fact and briefs were provided to the court by August 4, 1999. The adjudicatory issues presented are as follows: (1) whether the CT Page 12305 minor children were neglected as defined in Connecticut General Statutes § 46b-128 (b); and (2) whether the minor children were uncared for as defined in Connecticut General Statutes §46b-120 (9) in that they were homeless.
It should also be noted that on April 7, 1999, the parties stipulated and agreed as follows: (1) that Connecticut General Statutes § 46b-56b applies to these proceedings; (2) that the burden of proof is not shifted by virtue of § 46b-56b, but rather the father would be aided by the presumption created by that statute. This presumption would be applicable during the disposition stage assuming adjudication is made on either the neglect or uncared for grounds; and (3) that after all admissible evidence is presented at trial, the court must make a finding that to return the children to a parent might be detrimental to them. Once that showing is made, the best interests will be the standard for the dispositional placement of the children.
 II FACTS
The testimony presented provides more than adequate basis for the findings of fact made by the court. Much of it is uncontroverted.
Since 1992, the respondent parents have either been unwilling or unable to provide a permanent home to their children. Yyonne R., the maternal grandmother, initially stepped forward to provide the custody and care of the children. She did assume and perform her responsibilities as guardian and custodian of the children from 1993 to August, 1997, at which time, for substantial and justifiable health concerns, she could not continue to provide the day to day care for the children. At that time, physical custody of the children was assumed by Demisha M., who has provided for the daily ongoing needs of the children to the present time. Respondents mother and father were aware of the change in physical custody from the time it took place.
The evidence is more than ample to support the court's finding that both Yvonne R. and Demisha M. provided an excellent home to the children. The court also finds substantial evidence has been presented to overcome any presumption that a change in placement to either the mother or father would be in the children's best interest. In fact, substantial evidence has been presented to CT Page 12306 prove that such a change would be detrimental to the children. It should be noted once again that respondent mother has concurred and joined in DCF's position that custody and guardianship should be vested in Demisha M.
Evidence overcoming the presumption in favor of returning the children to the father and proving that a disposition doing so would be detrimental to the children was presented as follows: (a) evidence that father would not allow access of mother's side of the family to the children; (b) evidence that it would be disruptive to the children to relocate them to the father's custody; (c) evidence that father's methods of discipline are unduly harsh, inappropriate and in fact provided DCF with a substantiation of emotional neglect; (d) evidence from Dr. Rosado, who was recognized by the court as a expert psychologist in the field of children and families, that there would probably be at least short term effects on the children if forced to live with the father against their expressed wishes; (e) evidence that father's visitation with the children has been sporadic; (f) evidence that father's current wife causes upset to the children, especially to Yvonne and Sonya; (g) evidence that father drinks alcohol while driving his automobile with the children as passengers; and (h) evidence that father has physically disciplined the children by striking them with a "switch" and a belt, which discipline was inappropriate and excessive. Said evidence was more than sufficient to rebut the presumption set forth in Connecticut General Statutes § 46b-56b. It is further found that the children are of sufficient age and maturity to express a preference as to where and with whom they would like to live. All three children testified in open court that they would prefer to live with Demisha M. Their stated preference was unequivocal and was made with sound reasons stated for the record, many of which supported the court's findings as set forth above.
It is worthy to note that the parties to this action all have a sincere desire to satisfy the best interests of the children. Respondent father has presented himself as a placement resource for his children. He is to be commended for that. Yvonne R. and Demisha M. have each stepped in when necessary and assumed a responsibility they had no legal obligation to undertake. As stated, they have each offered their love and their homes to the children. The children love them and wish to remain in their care. CT Page 12307
Although the father has expressed his desire to have the children reside with him, the testimony presented sufficient basis to find that the children were neglected by him as defined by the terms of the amended petition. His appropriate discussions of the case with the children, accusations that they stole his checkbook, and ordering Jonathan into a locked, dark bathroom sufficiently formed the basis for physical and emotional neglect, especially when seen in light of his past inappropriate conduct toward the children when disciplining them.
It is also found that the children were educationally and physically neglected in that the de facto guardian of the children, Demisha M., was not able to get medical or educational information, nor was she able to make any medical or educational decisions regarding the children, which decisions were essential to the health and welfare of the children. It was apparent from the uncontroverted testimony of Demisha M. and Yvonne R. in that Demisha M. could not obtain information from the children's school, when necessary, nor was she able to make emergency medical decisions, when necessary. To that extent, the children were being denied proper care and attention, in accordance with the law defining same. Even if the need had not arisen for the children's educational or medical needs, it is established law that the court need not wait until actual damage or injury to the children has occurred before it has the responsibility to act on their behalf.
DCF also alleges that the children were homeless because they resided in a home different than their legal guardian. This issues tends to be a bit technical as it has already been found that both Yvonne R. and Demisha M. provided an excellent home to the children. The fact remains, however, that at the time of the filing of the petition, the children were in the residence of Demisha M. and she could not make any medical or educational decisions on their behalf. Homeless is normally defined as "having no home or haven; orphan," the American Heritage Dictionary of English Language, New College Edition, 1981. Although it would seem that the children have been provided with a home in the sense of a place to reside, being in a home that provides for all of their essential needs necessitates more. Children need to have an adult in their "home" that has the legal authority to gather necessary information and make necessary, appropriate and timely decisions for them. This is essential, as the law does not entrust these responsibilities to children. If someone residing with the children does not have the authority to CT Page 12308 act in that capacity, it deprives the children of an important right: The right to have decisions made on their behalf by someone who is familiar with their lives and who is able to make important and sometimes emergency decisions when need be. The fact that the legal guardian resides on the same street or city as the children's home, cannot justify the lack of a guardian with authority to act, when necessary, for a child. If so, how could we possibly develop a "proximity" test to determine if the guardian had lived close enough to satisfy its responsibilities.
 III APPLICABLE LAW
The parties have stipulated that Connecticut General Statutes § 46b-56b applies to these proceedings.[1] It was further agreed that the burden of proof created by this section would not be affected, but rather that the father in this case would be aided by the presumption created by that statute. Perez v. Perez,212 Conn. 63 (1989). In that case, the Supreme Court examined § 46b-56b and adopted the analysis of the trial court: "under46b-56b, the plaintiff [movant] still had the burden of showing that it would be in the best interest of the child to award custody to her. [The plaintiff, however,] is aided by a presumption in her favor which may be overcome only by substantial evidence which proves that such a change would be detrimental to the child." (Internal quotation marks omitted.) Id., 78. As indicated, if the court adjudicates the children either neglected or uncared for, as to find by the petition (as amended), the best interests of the children will be the criteria for the disposition. The presumption, as referenced above, must be considered a factor in that regard.
 IV THE DISPOSITION
It has been established by a fair preponderance of then evidence, much of which was uncontroverted testimony, and thencourt does find that the minor children, Jonathan P., Yvonne P., and Sonya P. were neglected and uncared for, and adjudication isnhereby made that said children were, in fact, neglected and uncared for.
The Court also finds these children to be homeless in CT Page 12309 that their current custodial arrangement does not provide them with the appropriate legal, educational and medical authorization and support necessary to their well being.
The court further finds that substantial evidence was presented proving that to remove the children to the father would be detrimental to them.
The court further finds that the children are of sufficient age and maturity to express their opinions and preferences as where they would care to reside. Their desire to remain in the custody and care of Demisha M. is reasonable in light of the entirety of the testimony presented.
The court further finds the best interests of the children dictate that custody and guardianship of said children be vested in Demisha M.
The father has failed to sustain the burden of proving his motion for custody.
The court does hereby:
(1) deny the father's motion for custody;
(2) grant DCF's petition and adjudicates Jonathan P., Yvonnen P., and Sonya P. as neglected, uncared for and homeless; and
(3) orders the custody and guardianship of Jonathan P., Yvonnen P., and Sonya P. to Demisha M.
Robert T. Resha, Judge