500 P.2d 505

Omer MORRIS, Plaintiff and Respondent,

v.

FARMERS HOME MUTUAL INSURANCE
COMPANY, Defendant and Appellant.

No. 12760.

Supreme Court of Utah.

Aug. 14, 1972.

Ellett, J., dissented and filed opinion
in which Henriod, J., concurred.

H. James Clegg, of Worsley, Snow & Christensen, Salt Lake City, for defendant-appellant.

George C. Morris, Salt Lake City, for plaintiff-respondent.

CROCKETT, Justice:

Plaintiff Morris recovered judgment against Farmers Home Mutual Insurance Company for water damage in the basement of his home which the trial court found to be covered under the terms of defendant's insurance policy. Defendant appeals, making the contentions: (1) that there is no basis in the evidence to support the trial court's finding that the damage was covered by the policy, but on the contrary, (2) the only reasonable finding from the evidence would be that it was from a cause affirmatively excluded by the policy.

The provision upon which the trial court found the defendant responsible is:

16. Accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioning system or from within a domestic appliance . . ..

The provision upon which the defendant seeks to avoid liability is:

THIS POLICY DOES NOT IN-- SURE AGAINST LOSS:

\* \* \* \* \* \*

3. caused by, resulting from, contributed to or aggravated by any of the following:

\* \* \* \* \* \*

c. water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks

through sidewalks, driveways, foundations, walls, basement or other floors or through doors, windows or any other opening in such sidewalks, driveways, foundations, walls or floors; . . .

There is no dispute about the fact that on the afternoon of September 2, 1970, water from some source flooded the plaintiff's basement, nor that it did damage to carpeting and other items to the extent of $400, as awarded by the court.[1] The matter of critical concern is where the water came from. When plaintiff returned to his home at approximately 4:30 that afternoon he first discovered this flooding, but did not determine its source. Thereafter inspections of the premises were made by experts retained separately by plaintiff and defendant. They did not discover any broken pipes, taps or other overt sources of leakage, nor did they find any likely source from below the surface or through sidewalks, foundations, etc., listed in the exclusion clause 3(c) hereinabove quoted. It was found that there appeared to be a "cold seam" (the cement had been set at different times) between the foundation wall and the floor, from which it was possible that there could be seepage of ground water into the basement.

On the basis of the evidence the court made these findings:

The Court *finds from a preponderance of the evidence* that the water did not enter the basement from an outside broken pipe, nor from seepage through the walls or basement floor, nor from outside flooding, nor from a high water table, nor from any other specified source which is expressly excluded in the policy coverage.

The Court *finds from a preponderance of the evidence* that the water entered the basement due to accidental discharge of water from a plumbing fixture located within the basement.[2] [Emphasis added.]

Defendant's attack on those findings is that because no one was there to see where the flooding water came from, nor had made any discovery as to a particular source, the evidence was insufficient to support the finding that it came from "a plumbing fixture within the basement." The nature of the world about us and the goings on therein are such that we witness only a small percentage of it by direct observation. A large portion of our awareness and knowledge is necessarily derived

---

1. Actual loss was $800, but due to circumstances not material here, one half of the loss was paid by another insurer.

2. This formally prepared and written finding takes preference over any oral observations of the trial judge in the colloquy with counsel seeming to suggest that the burden was on the defendant to show that the water came from a source excluded by paragraph 3(c) of the policy, see McCollum v. Clothier, 121 Utah 311, 241 P.2d 468.

from deductions based upon our observations of existing facts and circumstances. It is important to apply this principle to the prerogative of the court as the fact trier. He is entitled to make his findings of fact, not only on evidence concerning direct observations, but also to draw whatever inferences a person of ordinary intelligence and experience could fairly and reasonably draw therefrom.[3]

◼ Proceeding upon the premises just stated, we note our accord with certain other principles applicable to our consideration of defendant's attack upon the findings: that the plaintiff has the burden of proving that his loss comes within the coverage stated in the policy; that this burden is not met if the evidence is so inadequate or uncertain as to leave reasonable minds in a state of doubt or conjecture, but can only be satisfied by evidence which meets the universally recognized standard of proof required to establish facts in a civil case, that is, by a preponderance of the evidence. This requires that the evidence be such that reasonable minds acting fairly thereon could believe that the existence of the fact is more probable or more likely than its nonexistence,[4] so that a person of ordinary prudence could believe the fact

with sufficient assurance to act upon it in relation to matters of serious concern in his own affairs.

◼ We apply what has just been said to the evidence. It appears that an impartial and fair-minded fact trier might well reason: that inasmuch as there had been no previous flooding from underground, foundations, walls, etc., as excluded under paragraph 3(c) of the policy, he did not believe that the water came from any such source. He could then ask himself, how else could it get there, and proceed to reason further: that the only other source of water known to be entering the house, or to be within the house, was through and within the system of pipes and fixtures known as the plumbing; that it is within the realm of common experience that parts of the plumbing in the house, which includes the inlets, outlets, the various fixtures and drains, at times fail to function properly, or to be properly operated or attended, which may cause leakage, overflow, or the failure to drain, and thus result in water on the floor, and conclude therefrom, as the trial court did, that the most logical source was from the "accidental discharge . . . from a plumbing fixture."[5]

---

3. See 1 Wigmore on Evidence (3d Ed.), Sec. 25; Harrison v. Harrison, Mo.App., 417 S.W.2d 39.

4. McCormick on Evidence, Sec. 319; Alvarado v. Tucker, 2 Utah 2d 16, 268 P.2d 986.

5. A case involving analogous reasoning is Jennings v. Farmers Mutual Ins. Assn., 260 Iowa 279, 149 N.W.2d 298, see authorities therein cited.

It is my impression that at times any of us may be too much inclined to judge what is reasonable on the basis of what seems reasonable solely from our own point of view, and if it does not coincide with our own conclusion, to deem it unreasonable, rather than to allow a reasonable latitude as to what *other* reasonable minds may conclude. In order to honor the prerogative of the trial court as the finder of the facts, it is essential that this court should be as objective as possible, and keep in mind that the test to be applied is not necessarily whether the members of the court would reach the same conclusion, but whether the findings as made would be within the ambit of what any reasonable minds might find, even if they should differ from our own views.

In considering the issue presented by the defendant in the light of what we have said above, and upon the basis of the traditional rules which allow the trial court the prerogative not only of finding the facts shown by the direct evidence, but also of drawing any reasonable deductions and inferences that could fairly and reasonably be derived therefrom, and which require this court to review the total record in the light favorable to his findings, we are not persuaded that they are so without a reasonable basis in the evidence that they should be overturned.

Affirmed. Costs to plaintiff (respondent).

CALLISTER, C. J. and TUCKETT, J., concur.

ELLETT, Justice (dissenting).

I dissent.

In his opening statement to the court counsel for Mr. Morris summed up the matter correctly when he said:

. . . And they [plaintiff and an employee of the defendant] went through the basement and speculating as to where this water came from. I say speculating advisingly [sic], because to this date there is no definite proof as to how this water got in the basement. It is one of those odd things that just could not definitely be established. . . .

\*   \*   \*   \*   \*   \*

. . . As I have given Your Honor the evidence that is here, it is speculation from the word go in all directions whether it came from inside or outside. . . .

The trial judge likewise could not determine how the water got into the house. He stated:

But what I think I am saying here, Mr. Clegg, is I think that under the facts and circumstances here that the plaintiff has probably met his burden of proof of showing that this water damage occurred after your policy came into existence. And that since water damage to the house under certain circumstances would be covered by the policy, it then

becomes the burden of the insurance company to show that the damage resulted from a source that excluded liability of the insurance company for the damage, and I don't think you have done that. I don't know that you could. . . .

It thus is clear that no one, including the judge, knew how the damage occurred. The judge then misapplied the law when he assumed that defendant was obligated to show that the cause of the damage was something other than those covered by the policy.

The law is to the contrary. The burden was upon the plaintiff not only to show damage, but also to show that it was caused by some agency which the policy covered. The law is stated in 21 Insurance Law and Practice (Appleman) in section 12141 at page 74 to be:

> In an action on an accident policy, the burden is on the beneficiary to show by evidence that the insurer is liable upon its policy. Likewise, the insured has the burden of showing that his injury was covered by the terms of the policy. But the facts need be proven only by a preponderance of the evidence.

To the same effect Couch on Insurance 2d states the law to be:

> The insured has the burden of proving that the loss sustained was such as comes within the coverage of the policy. [Sec. 79:344]

In signing findings undoubtedly drawn by counsel for the plaintiff the court said:

> . . . The court finds from a preponderance of the evidence that the water entered the basement due to accidental discharge of water from a plumbing fixture located within the basement.

There is no evidence to support this finding.

The plaintiff called an expert witness and when asked for his opinion as to where the water came from replied:

THE WITNESS: I am afraid I would have to speculate if I were to give an opinion. I have already indicated that it could be from a pressure situation or water coming up on a cold joint crack that could have come through.

THE COURT: We never quite view an expert as speculating when he gives his opinion; but if his opinion is based on speculation and not on facts, then I guess it is not a valid opinion. But in your opinion, do you think that that water could have come up through the joints?

THE WITNESS: There is where the water was. It was my opinion that is where it would have to come from.

THE COURT: What would be its source, do you think?

THE WITNESS: The source would have to be outside water or it could be

from a broken pipe. I have inspected homes in this situation, but I couldn't hear any broken—I couldn't hear the noise of a broke pipe and I couldn't find any broken pipe. So that barred that situation.

The defendant also called an expert witness who testified:

Q Based upon your examination of the home and knowing what you do about construction of houses, did you have an opinion as to whether the water on the inside of the house had entered from the outside of the house?

A I figured it very definitely had to come from the outside of the house.

Other witnesses testified that there were no broken pipes anywhere and that there was no evidence that the water came from upstairs.

Down in the basement there was a shower with a drain sufficient to carry off the water from it and a tile to keep the water inside. There was no evidence of a stoppage in the drain and no water in the shower portion. There was also a toilet but there was no evidence of stoppage or overflow therefrom. There was a water basin but no water in it. The basin had an overflow outlet.

If the water came from inside the basement it had to come from an open faucet and all faucets were closed when the damage was discovered. There is not one bit of evidence of any discharge of water in the basement.

I would reverse the judgment and award costs to the appellant.

HENRIOD, J., concurs in the opinion of ELLETT, J.