No. 12381

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

IN THE MATTER OF THE ESTATE OF
VIOLET SMITH SLAVENS, Deceased.

---

Appeal from:  District Court of the Thirteenth Judicial District,
              Honorable C. B. Sande, Judge presiding.

Counsel of Record:

    For Appellant:

        Sandall, Moses and Cavan, Billings, Montana
        D. Frank Kampfe argued, Billings, Montana

    For Respondent:

        Evalyn B. Carson argued, Billings, Montana

---

                              Submitted:  March 28, 1973

                               Decided:  APR 3 0 1973

Filed:  APR 3 0 1973

_Thomas J. Kearney_
                                        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order entered in the district court of the thirteenth judicial district, Yellowstone County, denying petitioner's motion for a new trial.

The dispute in this case concerns a determination of the proper heir or heirs of the deceased Violet Smith Slavens. Decedent, hereinafter referred to as Mrs. Slavens, died intestate in September 1971. Rose Smith Meyers, Mrs. Slavens' sister, was appointed administratrix. Lon Marsh, petitioner here, then petitioned the court to determine heirship basing his claim on an alleged common law marriage between himself and Mrs. Slavens. The trial court found against the petitioner and we affirm.

Mrs. Slavens and Marsh were married in 1960 in Roundup, Montana. After seven years of marriage, the parties were divorced in June 1967. As part of the property settlement Mrs. Slavens received a ranch in Laurel, Montana and Marsh received an apartment building in Billings, Montana. Both parties being avid race horse enthusiasts, they continued to conduct certain business transactions jointly. Marsh managed the ranch and the race horses, while Mrs. Slavens collected rents on Marsh's property in Billings for him. Occasionally Marsh and Mrs. Slavens went on horse racing trips together; the parties were, at different times, seen at motels together after their divorce and petitioner alleges they had resumed marital relations.

The major portion of the controversy concerns whether the parties were living together in Mrs. Slavens' apartment in Billings. This is significant because, if true, it would add credence to Marsh's contention that a common law marriage existed at a time subsequent to their divorce. Marsh contended that shortly after their divorce they resumed a marriage relationship not unlike that which existed prior to their divorce. He further contended he and Mrs. Slavens agreed to live as husband and wife and they consummated the marriage.

- 2 -

Petitioner introduced considerable testimony and evidence tending to show that he lived at Mrs. Slavens' apartment, at least some of the time. Marsh received mail at the apartment, often cooked dinner there, watched television there, and had his own key to the apartment.

On the other hand, there was testimony by the apartment house manager that Marsh did not live there and Mrs. Slavens, in fact, lived alone. Further testimony of Mrs. Slavens' sisters indicated that, to her family, she was known as a single woman after her divorce from Marsh and she continued to regard herself as single until her death. In addition, respondents, the natural heirs of Mrs. Slavens, introduced numerous exhibits showing that Mrs. Slavens held herself out as a single woman after her divorce. These exhibits included income tax returns, retirement claims, doctor and hospital bills, trade bills, and correspondence.

While the fact that Marsh and Mrs. Slavens might have lived together is important, it is only one of several factors to be considered in determining whether a common law marriage existed. The Court is aware the presumption of a moral and legal relationship is a strong one. We noted in Welch v. All Persons, 78 Mont. 370, 384, 254 P. 179:

> "The presumption in favor of matrimony is one
> of the strongest known to the law."

The Court further noted in Welch that marriage does not arise by the mere fact of cohabitation alone.

Section 48-101, R.C.M. 1947, states what constitutes a marriage:

> "Marriage is a personal relation arising out
> of a civil contract, to which the consent of
> parties capable of making it is necessary.
> Consent alone will not constitute marriage;
> it must be followed by a solemnization, or by
> mutual and public assumption of the marital
> relation."

In Welch and more recently in Miller v. Townsend Lumber Co., 152 Mont. 210, 448 P.2d 148, the Court carefully considered section 48-101, R.C.M.1947. Applying that section to the facts

here, we find that the district court had sufficient evidence to find a common law marriage did not exist between Marsh and Mrs. Slavens subsequent to their divorce in 1967.

Petitioner relies on the recent case of In the Matter of the Estate of Swanson, ____Mont._____, 502 P.2d 33, 29 St.Rep. 819. Marsh contends Swanson is identical to his own case. We do not find the similarity between the circumstances of the two cases as does petitioner. In Swanson, Hazel Haefner Swanson held herself out to friends and neighbors as the wife of the deceased George Swanson. Violet Smith Slavens did not hold herself out as the wife of Lon Marsh. Here, the transcript contains testimony that other people assumed or considered then to be married but there is no showing that Mrs. Slavens ever held herself out as the wife of Marsh after the divorce. On the contrary, the documentary evidence would indicate that quite the opposite was true.

In the second appeal of Welch v. All Persons, 85 Mont. 114, 133, 278 P. 110, this Court said:

> "The consent of the parties must be mutual.
> * * * While the consent need not be expressed
> in any particular form * * * it must be given
> with such an intent on the part of each of
> the parties that marriage cannot be said to
> steal upon them unawares. 'One cannot become
> married unwittingly or accidentally. The
> consent required by our statutes, as well as
> the statutes of every state, and by the common
> law, must be seriously given with the deliberate
> intention that marriage result presently there-
> from.'" (Emphasis added).

Here, there simply was no showing, other than the alleged cohabitation, that Mrs. Slavens desired to create a new marriage or consented to a resumption of a marital relationship. Had the parties, in fact, continually cohabitated after their divorce, it is still only evidence of a marriage, not conclusive of the marriage itself. We are not persuaded that, on the basis of the alleged cohabitation, there existed a valid common law marriage.

The trial court had ample justification and sufficient evidence to find that no common law marriage existed between the

parties and that heirs of the decedent be determined in accordance with the laws of intestate succession, based on her single status.

The judgment of the district court is affirmed.

_____
Associate Justice

We Concur:

_____

_____

_____
Associate Justices.

_____
Hon. Edward T. Dussault, District
Judge, sitting for Chief Justice
James T. Harrison.