**HAGEN TRUCK LINES, Plaintiff and Respondent,**

v.

**SHERIFF OF WEBER COUNTY and Weber County Commission, Defendants and Appellants.**

**No. 18301.**

Supreme Court of Utah.

Aug. 29, 1983.

---

**3.** By recent amendment, our statutory law now expressly embodies that criteria. *See* note 1

*supra.*

Scott Daniels, Salt Lake City, for defendants and appellants.

Todd S. Winegar, Salt Lake City, for plaintiff and respondent.

PER CURIAM:

This is an appeal from a jury verdict which awarded damages for the negligent destruction of property.

In the early morning hours of December 11, 1977, one of plaintiff's rigs was passing through Weber County, carrying a load of prime cuts of meat valued at approximately $60,000. For an unknown reason, the rig crashed through the guardrail on an overpass and landed on the· roadway below. One of the occupants of the rig was injured as he was thrown clear of the accident; the driver was killed when the rig caught fire.

Weber County officials arrived on the scene. After several hours, the fire was extinguished and the officer in charge directed that the cargo be disposed of at the county landfill. The officer believed that the meat could not be salvaged because of the diesel spill, the intense heat from the fire, and the water which had been used to extinguish the fire.

Plaintiff was contacted and immediately dispatched a representative to the scene. Plaintiff's representative, one Hicks, went first to the accident site and then to the landfill. He noticed that the meat had been dumped on top of some dead animals but otherwise appeared to be in fairly good condition. The next morning, Hicks returned to the landfill and made a more thorough inspection. He testified at trial that he looked at 150 to 200 pieces of meat to get an idea as to its condition. Testimony was that the meat had been vacuum packed in three-ply plastic containers and then placed in cardboard boxes. Under the supervision of the Department of Agriculture, the damaged meat would typically be unpacked, trimmed, tested and repackaged. Some of that deemed not fit for human consumption would be used in pet food or fertilizer. Once dumped on top of the dead animals at the landfill, however, none of the meat was salvageable.

When Hicks was asked how much of the meat was salvageable, counsel for defendants objected. The court ruled that Hicks could answer the question but only as to that he had inspected and not the entire load. Hicks said that of the meat he inspected, 40% was salvageable for human consumption but for the contamination at the landfill.

The jury returned a general verdict finding defendants liable for damages in the amount of $19,377.[1] On appeal, defendants seek to have the case remanded on the issue of damages. Defendants' theory is that there was no evidence that the 150 to 200 pieces of meat inspected by Hicks were representative of the rest of the load and hence, that the evidence is insufficient to support the jury verdict.

A jury verdict will be sustained where the findings are supported by direct evidence and inferences to be drawn therefrom.[2] In order to award damages for the entire load, the jury therefore needed only to be convinced that the meat inspected by Hicks was a fair sampling of the load. Hicks testified that he took his samples from a "cross-section" of the load and that he "dug through" the meat from "one end of it to the other." Such evidence provided

---

1. This was apparently 40% of the original value of the meat less the costs of recovery.

2. *Corporation of the President v. Jolley*, 24 Utah 2d 187, 467 P.2d 984 (1970); *Morris v. Farmers Home Mutual Insurance Co.*, 28 Utah 2d 206, 500 P.2d 505 (1972).

sufficient basis for the jury to award damages for the entire load.

Affirmed.