**Michael Loy HANSEN, Plaintiff and Appellant,**

v.

**Laura T. HANSEN, Defendant and Appellee.**

No. 970321-CA.

Court of Appeals of Utah.

May 7, 1998.

---

Brent D. Young and Ryan J. Taylor, Provo, for Plaintiff and Appellant.

W. Andrew McCullough, Orem, for Defendant and Appellee.

Before BENCH, GREENWOOD and ORME, JJ.

GREENWOOD, Judge:

Michael Loy Hansen appeals the trial court's order dismissing his action against Laura T. Hansen for failure to establish a common law marriage under Utah Code Ann. § 30–1–4.5 (1995). We affirm.

## BACKGROUND

On October 12, 1995, Mr. Hansen filed a Verified Complaint against Ms. Hansen, alleging that he and Ms. Hansen were married under Utah's common law marriage statute, Utah Code Ann. § 30–1–4.5 (1995), and requesting a divorce, child custody and support orders, and property distribution.

After an evidentiary hearing, the trial court entered Findings of Facts and Conclusions of Law. Applying a clear and convincing standard of proof to the evidence, the court found that Mr. Hansen and Ms. Hansen had been married and divorced prior to their recent cohabitation. Furthermore, during that cohabitation period, Mr. Hansen and Ms. Hansen had, at least for a time, held themselves out to some as being married. However, the parties did not refer to each other as husband and wife in public and their closest friends did not believe the two were married. In addition, although Mr. Hansen asked Ms. Hansen several times to formally remarry him, Ms. Hansen repeatedly rejected Mr. Hansen's proposals. Finally, although Ms. Hansen filed several insurance claims as Mr. Hansen's wife during the period, the parties filed separate tax returns for both years during which the parties cohabitated.

The trial court concluded that "[b]oth parties are and were capable of giving consent, they were and are capable of entering a solemnized marriage under the provision of law, they cohabitated, and they mutually assumed marital rights, duties, and obligations. The parties did not, however, acquire a uniform reputation as husband and wife," and there was "no proof to the legal standard required that Laura consented to the existence of a marital relationship after the previous divorce." The court entered a Judgment of Dismissal on February 7, 1997.

Mr. Hansen subsequently filed a Motion to Alter or Amend Findings of Fact and Conclusions of Law, asserting that the trial court had applied the wrong standard of proof and that a marriage existed. He also argued that, if the trial court's decision were reversed on appeal, application of the time limitation in section 30–1–4.5 to this case would violate the Utah Constitution. The trial court denied the motion, and this appeal followed.

## ISSUES AND STANDARDS OF REVIEW

Mr. Hansen presents two issues on appeal which we consider: (1) that the trial court erred in applying a clear and convincing standard of proof to the establishment of a marriage under Utah Code Ann. § 30–1–4.5 (1995); and (2) that, under a proper preponderance standard of proof, the factual findings support a determination that Mr. Hansen and Ms. Hansen were married.

■ "This court reviews the trial court's interpretation of section 30–1–4.5 ... under a correctness standard." *Bunch v. Englehorn,* 906 P.2d 918, 920 (Utah Ct.App.1995); *see also State ex rel. R.N.J.,* 908 P.2d 345, 349 (Utah Ct.App.1995) (stating whether trial court applied wrong standard of proof is question of law reviewed for correctness). Furthermore, application of a legal standard to undisputed facts presents a question of law; thus, if the trial court erred in the standard it applied, we may review the facts to determine whether they nevertheless support the trial court's decision under the correct standard. *See Russell v. Thomson Newspapers, Inc.,* 842 P.2d 896, 905 (Utah 1992) (suggesting appellate court may review factual findings under corrected standard of proof).

## ANALYSIS

On appeal, Mr. Hansen argues that the trial court erred in applying a clear and convincing standard of proof to the establish-

ment of a marriage under section 30–1–4.5,[1] asserting that the statute clearly mandates application of a preponderance of the evidence standard. Mr. Hansen then argues that, under the preponderance standard, the undisputed facts support a determination of marriage. We address each issue in turn.

### Standard of Proof Required under Section 30–1–4.5

Mr. Hansen argues that the trial court erred when it required clear and convincing evidence of the establishment of a common law marriage under section 30–1–4.5. Mr. Hansen contends that in so doing, the trial court disregarded the statute's plain language.

■ Under traditional rules of statutory construction, statutory language " 'should be interpreted and applied according to its usually accepted meaning, where the ordinary meaning ... results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction of the express purpose of the statute.' " *Bonneville Int'l Corp. v. State Tax Comm'n,* 858 P.2d 1045, 1048 (Utah Ct.App.1993) (quoting *Morton Int'l Inc. v. State Tax Comm'n,* 814 P.2d 581, 590 (Utah 1991)). In addition, where the statute's language clearly intends a certain result, courts may not rely on outside sources to construct an alternate interpretation. *See id.* ("Unambiguous language in [a] statute may not be interpreted to contradict its plain meaning." (quotation marks and citations omitted)).

With these rules in mind, we examine the statute. It states: "Evidence of a marriage recognizable under this section may be manifested in any form, and *may be proved under the same general rules of evidence as facts in*

*other cases."* Utah Code Ann. § 30–1–4.5(2) (1995) (emphasis added). Mr. Hansen argues that the emphasized language mandates application of a preponderance of the evidence standard of proof to the establishment of a marriage under section 30–1–4.5. We agree.

■ There can be little doubt that allocation of a party's burden of proof in a proceeding—that rule which dictates the quantum and quality of evidence required to prevail— is a rule of evidence. *See Kusy v. K–Mart Apparel Fashion Corp.,* 681 P.2d 1232, 1235 (Utah 1984) (describing res ipsa loquitur as "evidentiary rule that permits an inference of negligence"), *overruled in part by Randle v. Allen,* 862 .P.2d 1329, 1336 (Utah 1993); *Staheli v. Farmers' Coop.,* 655 P.2d 680, 683 (Utah 1982) (describing presumption of negligence in bailment law as "evidentiary rule" that "allocates the burden of proof"); *see also Perez v. Perez,* 212 Conn. 63, 561 A.2d 907, 915 (1989) (describing "rules concerning the burden of proof" as "evidentiary rules"); *State v. Willis,* 332 N.W.2d 180, 184 (Minn. 1983) (describing rules "which ... regulate the burden of proof" as "evidentiary rules").

■ There is similarly little doubt that the standard of proof generally applied in civil proceedings is the preponderance of the evidence standard. *See Johns v. Shulsen,* 717 P.2d 1336, 1338 (Utah 1986) ("It is universally recognized that the standard of proof in civil actions is by a preponderance of the evidence."); *Lipman v. Industrial Comm'n,* 592 P.2d 616, 618 (Utah 1979) (noting preponderance is "usual standard of proof ... used in most civil actions"); *Morris v. Farmers Home Mut. Ins. Co.,* 28 Utah 2d 206, 500 P.2d 505, 507 (1972) (stating preponderance

---

1. Section 30–1–4.5 of the Utah Code provides:

(1) A marriage which is not solemnized according to this chapter shall be legal and valid if a court or administrative order establishes that it arises out of a contract between two consenting parties who:
  (a) are capable of giving consent;
  (b) are legally capable of entering a solemnized marriage under the provisions of this chapter;
  (c) have cohabited;
  (d) mutually assume marital rights, duties, and obligations; and

(e) who hold themselves out as and have acquired a uniform and general reputation as husband and wife.
(2) The determination or establishment of a marriage under this section must occur during the relationship described in Subsection (1), or within one year following the termination of that relationship. Evidence of a marriage recognizable under this section may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases.
Utah Code Ann. § 30–1–4.5 (1995).

is "universally recognized standard of proof required to establish facts in a civil case"); *see also Harken v. Board of Oil, Gas & Mining,* 920 P.2d 1176, 1182 (Utah 1996) (stating "proper standard of proof in the administrative context is generally the 'preponderance of the evidence' standard" absent " 'allegation of fraud or a statute or a court rule *requiring* [a] higher standard' " (citation omitted) (emphasis added)).

■ In light of this case law, we find the language of section 30–1–4.5(2) unambiguous. The standard of proof required to establish a marriage under section 30–1–4.5 is one of the "general rules of evidence" referred to in section 30–1–4.5(2). The standard generally applied in "other [civil] cases" is a preponderance of the evidence standard. Thus, the standard of proof applicable to the establishment of facts under section 30–1–4.5 is a preponderance of the evidence standard.

■ We acknowledge the trial court's thoughtful analysis of the standards of proof applied in other jurisdictions and of public policy considerations that may weigh in favor of a higher standard than a preponderance. However, where a statute clearly intends a certain result, we are not free to survey other sources to displace that intent. *Cf. Visitor Info. Ctr. Auth. v. Customer Serv. Div., Utah State Tax Comm'n,* 930 P.2d 1196, 1198 (Utah 1997) (stating court "need … delve into the uncertain facts of legislative history" only when "statute on its face is unclear or ambiguous").

### Sufficiency of the Evidence under Preponderance Standard

■ Because of our determination that the trial court applied the incorrect standard of proof, we must now address Mr. Hansen's assertion that the undisputed facts support a determination of marriage under a preponderance standard. In doing so, we note that Mr. Hansen has not challenged any of the trial court's findings of fact. Thus, if those findings negate the possibility that a marriage existed, Mr. Hansen's claim fails. *See Utah Dep't of Transp. v. 6200 South Assocs.,* 872 P.2d 462, 469 (Utah Ct.App.1994) (stating appellant has burden not only "to show er-

ror" but also "of establishing that this error was prejudicial.").

Section 30–1–4.5(1) of the Utah Code provides:

(1) A marriage which is not solemnized according to this chapter shall be legal and valid if a court or administrative order establishes that it arises out of a contract between two consenting parties who:

(a) are capable of giving consent;

(b) are legally capable of entering a solemnized marriage under the provisions of this chapter;

(c) have cohabitated;

(d) mutually assume marital rights, duties, and obligations; and

(e) who hold themselves out as and have acquired a uniform and general reputation as husband and wife.

Utah Code Ann. § 30–1–4.5(1) (1995). Significantly, the statutory language is in the conjunctive. Thus, the Utah Supreme Court has noted that a claimant must prove each of six different elements to establish a marriage under that section:

No single factor is determinative. Evidence of each element is essential. Consenting parties must show cohabitation, assumption of marital rights and duties, a general reputation as husband and wife, capacity to marry, and capacity to give consent. Often these five elements … can be proved or disproved with relative ease. However, whether the parties consented to be married is often disputed.

*Whyte v. Blair,* 885 P.2d 791, 794 (Utah 1994) (citation omitted). Although "evidence of general reputation, cohabitation, and assumption of marital rights and duties would be evidence of consent," such evidence "standing alone, would not be sufficient." *Id.* at 795. "Section 30–1–4.5 requires general reputation, cohabitation, and assumption of marital obligations as separate elements in addition to consent." *Id.* In this case, the trial court concluded that "[t]he parties did not … acquire a uniform reputation as husband and wife" and that "[t]here is no proof to the legal standard required that Laura consented to the existence of a marital relationship after the previous divorce."

Section 30–1–4.5(1)(e) states that a person claiming marriage under the statute must establish the couple has "acquired a uniform and general reputation as husband and wife." Although Utah courts have yet to specify the requirements of this provision, courts of other jurisdictions have consistently held that a "partial or divided" reputation of marriage is insufficient. *See, e.g., People v. Lucero,* 747 P.2d 660, 665 (Colo.1987) (stating "general reputation or repute means 'the understanding among the neighbors and acquaintances with whom the parties associate in their daily life, that they are living together as husband and wife.'" (citation omitted)); *Baynes v. Baynes,* 219 Ga.App. 848, 467 S.E.2d 195, 196 (1996) (stating "such legal relationship cannot be partial or periodic."); *In re Estate of Kovalchick,* 345 Pa.Super. 229, 498 A.2d 374, 376 (1985) (requiring "general, as distinguished from partial or divided, reputation of marriage."); *Eagle v. W.C.A.B.,* 144 Pa. Cmwlth. 552, 602 A.2d 387, 389 (1992) ("'Proof by reputation for such purposes must be general and not confined to a few persons in the immediate neighborhood.'" (citation omitted)).

Furthermore, although consent "may be established by acquiescence," *Whyte,* 885 P.2d at 794 n. 3, "'"[t]he consent ... must be seriously given with the deliberate intention that marriage result presently therefrom."'" *In re Estate of Slavens,* 162 Mont. 123, 509 P.2d 293, 295 (1973) (citations omitted). A "nonexhaustive list" of evidence probative of consent includes:

> maintenance of joint banking and credit accounts; purchase and joint ownership of property; the use of the man's surname by the woman and/or the children of the union; the filing of joint tax returns; speaking of each other in the presence of third parties as being married; and declaring the relationship in documents executed by them while living together, such as deeds, wills, and other formal instruments.

*Whyte,* 885 P.2d at 795.

In this case, the trial court specifically found:

> 11. During the periods of cohabitation the parties spent time with several family friends, including going on trips.... During all of those trips the parties did not refer to each other as husband or wife.
>
> 12. The friends who knew the parties best believed that the parties were living together as a couple but not as husband and wife.
>
> 13. During the period of cohabitation Laura had an intimate relationship with one of these friends....
>
> ....
>
> 20. On several occasions during the period of cohabitation Mike told Laura that he wanted to be married to her and asked her to remarry him. On each of those occasions Laura declined to enter into a new marriage with Mike.
>
> 21. The parties filed separate tax returns for 1994 and 1995.

■ Mr. Hansen's failure to challenge these findings is fatal to his appeal. The fact that the parties' closest friends did not consider the two married, in conjunction with the fact that Mr. Hansen and Ms. Hansen were not consistent in holding themselves out as married to the rest of the world, negates the establishment—under any standard of proof—of the statutory requirement that the couple "acquired a uniform and general reputation as husband and wife." Utah Code Ann. § 30–1–4.5(1)(d) (1995).

■ Similarly, the trial court found that Ms. Hansen repeatedly rejected Mr. Hansen's requests to formally remarry, that Ms. Hansen had an intimate relationship with one of the couple's friends, and that neither referred to the other as husband and wife in public or amongst friends—indicia that Ms. Hansen did not want or consent to the rights and responsibilities that accompany a legally recognized marital relationship. These facts support—again, under any standard of proof—the trial court's conclusion that Mr. Hansen failed to establish the necessary element of consent.

■ If the findings of fact merely reflected that Mr. Hansen had not met a clear and convincing burden of proof on each of the elements required under section 30–1–4.5, remand would be appropriate to allow the trial court to reconsider the evidence

under the correct standard of proof. *See Ashcroft v. Industrial Comm'n*, 855 P.2d 267, 269 (Utah Ct.App.1993) (remanding workers' compensation claim to allow Commission to reconsider evidence under correct standard of proof). However, in this case, the trial court made findings directly contrary to those required by section 30–1–4.5. These findings necessarily foreclose the possibility that Mr. Hansen could establish a marriage under that section. We thus affirm the trial court's dismissal of Mr. Hansen's action.[2] *See In re Estate of Ioupe*, 878 P.2d 1168, 1173 (Utah Ct.App.1994) (stating "remand for reconsideration with the correct principles in mind is not necessary" where, notwithstanding legal error, "detailed factual findings support[ed] its determination.").

## CONCLUSION

We hold that a marriage under section 30–1–4.5(2) need be established only by a preponderance of the evidence. We conclude, however, that the undisputed facts in this case foreclose any possibility that Mr. Hansen could prevail under that standard. We thus reverse the trial court's decision regarding the appropriate standard of proof but affirm its decision that Mr. Hansen failed to establish a marriage in any case.

BENCH, J., concurs.

ORME, Judge (concurring in the result):

I agree that the trial court's judgment should be affirmed and agree with much of what is said in the main opinion. I write separately because I cannot agree with my colleagues' endorsement of the trial court's finding that defendant's rejection of plaintiff's proposal of official marriage shows her lack of consent under the implied marriage statute. Quite the contrary, I think it is absolutely typical of "just living together"

arrangements, whether or not they have ripened into an implied marriage under our statute, that one or both parties have rejected "normal" marriage. It is at best an entirely neutral consideration, as can be readily demonstrated by this case: Did defendant refuse plaintiff's proposal because she was adamant that she wanted *nothing* "marital" to do with him or did she reject his proposal because she considered herself already married to him under the statute and wished to avoid, as many in this situation do, the involvement of the church or state; the hassle and expense of a license, ceremony and reception; or the embarrassment of making such a production of remarrying someone she had already married once and divorced?

Because the statute requires all six elements in order to find an implied marriage, and because the "uniform and general reputation" prong is so clearly lacking here, I see no need to reach the "consent" element. If we have to reach it, it seems to me we should do two things: First, distance ourselves from the suggestion that one who rejects a proposal for official marriage has necessarily registered her lack of consent to enter into a contract of the sort contemplated in section 30–1–4.5, and second, remand for the trial court to reassess the consent element because, unlike with its treatment of "reputation," the trial court here specifically tied its analysis to the incorrect "clear and convincing" standard, concluding "[t]here is no proof *to the legal standard required* that Laura consented to the existence of a marital relationship after the previous divorce." (Emphasis added.) It is obviously an open question whether the trial court would have reached the same conclusion had it ignored the irrelevant rejected-proposal evidence and employed the less onerous "preponderance" standard of proof.

---

2. Because of our conclusion, we do not reach Mr. Hansen's constitutional challenge to the requirement, stated in section 30–1–4.5(2), that "determination or establishment of a marriage under this section must occur ... within one year following the termination of that relationship." *See Redwood Gym v. Salt Lake County Comm'n*, 624 P.2d 1138, 1148 (Utah 1981) (stating court does not reach constitutional challenge to statute until "a conflict over the application

[has] sharpened into an actual or imminent clash of legal rights and obligations between the parties thereto."). However, we note again that the plain language of this provision may "present a constitutional question" if "a trial court were to enter a judgment denying a common-law marriage within one year of separation, and that judgment were reversed on appeal and the matter remanded." *Bunch v. Englehorn*, 906 P.2d 918, 920–21 & n. 3 (Utah Ct.App.1995).

I join my colleagues in affirming the judgment appealed from, but register my disagreement with their unnecessary—and incorrect—treatment of the consent element.